## TRICE, administratrix, *vs.* ROSE.

Where, in a claim case, the claimant insisted that in 1872, he had been the surety of the defendant, and that in 1873, he had substituted himself as the debtor, and in consideration thereof, had purchased the land and gone into possession; and where it appeared that the defendant had remained upon the land for about six months after

the sale claimed, until the claimant could prepare a place for him at his house, and then had gone to live with him; that the plaintiff's judgment was rendered in 1875; that the defendant had given in the property for taxes as agent, without stating for whom he was agent, from 1873 to 1883; that during that time, the claimant gave in for taxation other land belonging to himself; that after he claimed to have purchased the land, he foreclosed the mortgage thereon, and had since pledged the execution issued on the foreclosure as a security for money borrowed by him; and that in 1883, he took a deed to the property from the defendant; and where it appeared also that the defendant had originally obtained the land through the will of his grandmother, who appointed a trustee to hold it for him: it was admissible to show that in 1832 the defendant applied for and obtained a trustee to be appointed by the superior court as the successor of the original trustee in the will.

(a) Where it appeared that a claimant of land purchased all the property of an insolvent debtor for about half its value, and on the trial of a claim case based on a judgment founded upon a debt then in existence, various badges of fraud were shown, it was incumbent upon the defendant to have met and overcome them.

April 18, 1887.

Evidence. Fraud. Burden of Proof. Before Judge LAWSON. Baldwin Superior Court. July Term, 1886.

Reported in the decision.

D. B. SANFORD; C. P. CRAWFORD, for plaintiff in error.

WHITFIELD & ALLEN; J. H. LUMPKIN; GUSTIN & HALL, for defendant.

BLANDFORD, Justice.

Mrs. Trice obtained a judgment against Nathan McGhee, on the 23d of February, 1875; and upon this judgment execution issued, and was levied upon a certain tract of land, 256 acres, known as " the Jackson place." Rose interposed a claim to this land, and the issue thus formed was tried. He claimed that in January, 1873, he purchased this land from McGhee; that in August, 1872, he had become the surety of McGhee to Sibley & Son for the

sum of $2,500, and that McGhee, to indemnify him against loss as surety, made a mortgage to him of this tract of land; that on the 1st of January, 1873, he (Rose) took up McGhee's note to Sibley & Son, upon which he was surety, and gave his own note for $2,500 to Sibley & Son and secured them; in consequence of which, McGhee sold him this lot of land. Rose said that he went into possession of the land. After the time of this purchase, Rose foreclosed his mortgage on the land; and he afterwards pledged the writ of execution issued upon the judgment of foreclosure for money he had borrowed from other persons. It was shown that McGhee remained in possession of the land after Rose says he sold it to him, some six months, until Rose could fix up a house for him to live in; he then took McGhee to his house, and McGhee lived with him until the time of his death, a short time since. McGhee gave in the land for taxes as agent, not stating for whom, and continued so to give it in for ten years, from 1873 to 1883; and all that time he (Rose) gave in, as his own, other land that belonged to him. In 1882, McGhee applied to the superior court to have a trustee appointed for himself. It appears that this land was given to him by the will of his grandmother, and in that will she appointed a trustee for him to prevent him from selling it, or prevent its being levied on and taken from him on account of judgments or executions that might be against him. The plaintiff in execution offered in evidence this application of McGhee for the appointment of a trustee, and the court rejected it; and this is the only error of law complained of in the record.

In 1883, long after the judgment of Trice, Rose took a conveyance from McGhee to this lot of land.

The jury found the property not subject, and a motion for a new trial was made under these circumstances. The court refused it. We think a new trial ought to have been granted. It appears that the land was worth $5,000 or thereabouts. McGhee was insolvent at the time. This

debt of Mrs. Trice was then in existence. He was insolvent in 1873, when Rose says he purchased this land from him. He only gave for it, according to his own account, $2,500. The proof shows that Rose only paid out about $800. If it be true that he purchased the land from McGhee, it is hard to bring the mind to believe that he was a *bona fide* purchaser under such circumstances. A man cannot be said to be a *bona fide* purchaser who purchases, from one who is insolvent, all of the insolvent's property at about half of its value. These are the facts shown by this record. We think there are many badges of fraud in this case; and it was incumbent on the defendant in error to have met and overcome them. He should have explained why it was that McGhee gave in this property for taxes for ten years referred to; why he was living in the same house with McGhee, and why he himself did not give in the property for taxation. He ought to have shown that he paid value for the property, and not only that, but that he paid a fair price for it, according to its value. He ought to have shown that after he purchased it, McGhee had no interest in the property; that at the time the purchase was made, no trust or benefit was reserved to McGhee. Trice offered the application of McGhee for the appointment of a trustee, in which McGhee alleged that he was the owner of the land at that time, and that he lived with Rose at his house; and we think that in such a case as this, it ought to have been admitted in evidence. Rose had stated that after this application was made, this land belonged to him; that he accepted a deed of conveyance, no deed having been made prior to that time (1883). We think the evidence was admissible, and the court erred in not admitting it and in not granting a new trial.

Judgment reversed.