VANCE & KIRBY *v.* ROBERTS, sheriff, *et al.*

1. On rule for distribution of a fund arising from the sale of a debtor's property, an issue tendered by mortgagees against others of equal date, that the mortgage of the latter was intended by the mortgagor to be inferior in dignity to that of the former, and that he instructed the person who drew the mortgage to make it so appear therein, relied upon his doing so and refused to make any mortgage to the creditors attacked except it should expressly be subject to the mortgage of the creditors tendering the issue, but that the scrivener, through accident, mistake or fraud, omitted to follow this direction,—was properly stricken on demurrer, because it was an effort to reform the mortgage without making the mortgagor a party.

2. An issue alleging that the debtor had delivered to the mortgagees sought to be postponed, as collateral, solvent notes and mortgages aggregating a large sum, and that these were in the possession of said mortgagees and had been or could have been collected by the exercise of proper diligence, was properly stricken on demurrer. The mortgagees could not be charged with the collaterals unless they had collected them. If not collected, the collaterals would still be assets of the debtor and subject to the claims of any of his creditors after those to whom he delivered them had been paid; and there is no allegation that any of them were lost by reason of a failure to collect.

3. That the mortgagees sought to be postponed had a defeasible deed to certain realty from the debtor, would not compel them to relinquish their lien upon the money in the hands of the sheriff to be distributed, and to proceed against the land, they having no judgment lien against it, and it not appearing that the deed to them contained a power authorizing them to sell the land for the purpose of paying their debt. Although they held a lien against the land, and certain notes and accounts as collateral, these did not constitute an ultimate fund equally as accessible to them as the money in court. And although it was alleged against them that they were in possession and had received rent for the land since the date of the deed, the issue tendered did not set up any distinct claim to have the rent applied to their debt, nor aver that it had not been so applied, or that it was not embraced in the payments set up in the issue which was allowed to stand.

4. That there is a variance in the amount stated in the mortgage and that stated in the affidavit for foreclosure, does not make the foreclosure void. If the amount claimed in the affidavit be too large, the defendant or an opposing creditor can contest the amount and have it reduced.

5. The verdict not covering the issue which the jury were empanelled
   to try, it was the duty of the court to send them back to their
   room that this issue might be passed upon by them.
   December 23, 1890.

Money rule. Mortgages. Debtor and creditor. Evidence. Verdict. Before Judge MILNER. Bartow superior court. January term, 1890.

Reported in the decision.

F. A. CANTRELL and J. A. BAKER, for plaintiffs in error.

J. W. AKIN and J. H. WIKLE, *contra.*

SIMMONS, Justice.

Mary A. Bibb brought her rule against the sheriff of Bartow county for the distribution of funds in the hands of the sheriff arising from the sale of certain personalty of B. F. Bibb, under the levy of a *fi. fa.* in her favor, and of certain mortgage executions on the property. To this rule Moore, Marsh & Co., mortgage creditors, and Vance & Kirby, also mortgage creditors, of B. F. Bibb, were made parties. The *fi. fa.* of Mrs. Bibb was allowed to be paid, and the real contest is between the mortgage creditors mentioned. Vance & Kirby contested the right of Moore, Marsh & Co. to participate in the distribution.

1. The first issue made by Vance & Kirby against Moore, Marsh & Co. was, in substance, that Moore, Marsh & Co. should not participate equally with Vance & Kirby in the distribution, because, although the two mortgages were of equal date and both written by Ashford, one of the firm of Moore, Marsh & Co., Vance & Kirby's mortgage was written first by Ashford, and after its execution and delivery, Ashford was instructed by Bibb to write a mortgage for Moore, Marsh & Co. upon the same property, having the mortgage to express that it was subject to and inferior in dignity to the mortgage of Vance & Kirby; and that Bibb relied

implicitly upon Ashford to write the mortgage as instructed, and positively refused to make Moore, Marsh & Co. any mortgage except as should be made expressly subject to the mortgage of Vance & Kirby; and that when Bibb signed the mortgage to Moore, Marsh & Co. he thought it contained a clause making it subject to the mortgage of Vance & Kirby; but that Ashford, either through accident, mistake or fraud, omitted to make the mortgage of Moore, Marsh & Co. subject to that of Vance & Kirby, and therefore the mortgage of Moore, Marsh & Co. should not in equity be allowed to gain a dignity it would not otherwise have, but should be held inferior in lien to the mortgage of Vance & Kirby. This issue was stricken by the court upon demurrer, and Vance & Kirby excepted. We think the court did right in sustaining the demurrer. It was an effort on the part of Vance & Kirby to reform a mortgage-deed made by Bibb to Moore, Marsh & Co., without making Bibb a party thereto. While the charges made by Vance & Kirby against Ashford may be true, we do not know but that Bibb, the maker of the mortgage, is satisfied with it as it stands; and as far as appears from the record he is satisfied, as he was not made a party, and it does not appear that he requested the court that he should be made a party. We do not see how the written contract made between him and Moore, Marsh & Co. could be changed without his consent or without his being made a party to the pleadings.

2. The second issue made by Vance & Kirby was, that Moore, Marsh & Co. had received payments on their mortgage, amounting in the aggregate to $400, for which they had given no credit. This was also demurred to and the demurrer overruled, and it was allowed to stand as an issue between the parties.

3. The third issue made was that Bibb had delivered to Moore, Marsh & Co., as collateral, solvent notes and

mortgages aggregating $600 or other large sum, and that the amounts and dates and time when payable were unknown to Vance & Kirby, but the notes and mortgages were in the possession of Moore, Marsh & Co., and had been collected or could have been by the exercise of proper diligence. This also was stricken on demurrer. There was no error in sustaining the demurrer to this issue. It was too vague and uncertain to submit to a jury. If it had alleged positively that the collaterals had been collected by Moore, Marsh & Co., it would have been a good plea or issue, and the court would not have stricken it, as he refused to do as to the second issue above referred to; but when the plea was that the collaterals had been or could have been collected, it was bad; because if the collaterals had not been collected by Moore, Marsh & Co. they were merely held as collaterals, and Moore, Marsh & Co. could not be charged with the collaterals unless they had collected them. If not collected, they held them as they would any other security which Bibb might have given them, and Vance & Kirby had no right to insist that securities which Moore, Marsh & Co. may have obtained from Bibb should be credited on their mortgage, unless they had collected the securities. If not collected, they would still be assets of Bibb, and would be subject to the claims of any of Bibb's creditors after Moore, Marsh & Co. had been paid. There was no allegation that any of them were lost by reason of a failure to collect.

4. The fourth issue filed by Vance & Kirby was, in substance, that to secure the same debt to Moore, Marsh & Co., Bibb had made them a deed conveying certain realty, taking from them a bond to reconvey upon the payment of his indebtedness to them. This realty was worth $3,500, and $20 per month rent, which rent they had been receiving since the date of the deed, and were

in possession of the land. Vance & Kirby had no lien
or claim on this realty, but Moore, Marsh & Co. had an
exclusive lien upon it. Vance & Kirby therefore prayed
that Moore, Marsh & Co. be compelled to go upon the
realty and the notes and accounts alluded to in the last
issue, upon which they had an exclusive lien, and that
the funds in the hands of the sheriff be applied to the
debt of Vance & Kirby. This also was stricken on de-
murrer.

Our code, §1949, declares : "As among themselves,
creditors must so prosecute their own rights as not un-
necessarily to jeopard the rights of others; hence, a
creditor having a lien on two funds of the debtor
equally accessible to him, will be compelled to pursue
the one on which other creditors have no lien." It is
argued by counsel for the plaintiff in error that, under
this section, Moore, Marsh & Co. should have been com-
pelled by the court to relinquish their lien upon the
money in the hands of the sheriff and in court for dis-
tribution, and proceed against the land and notes and
accounts which they had as collateral, and that the
court therefore erred in sustaining the demurrer to this
plea. We do not think so, under the facts in this case.
The facts show, that Moore, Marsh & Co. had a defeasi-
ble deed to certain realty, and some notes and accounts
as collateral. They had no judgment lien against the
land. Nor does it appear that the deed which Bibb
made to them to the land contained a power of sale
authorizing Moore, Marsh & Co. to sell the land for the
purpose of paying their debt. Nor were the notes and
accounts sued to judgment and that judgment levied,
the property sold and the money brought into court.
We do not think that under these circumstances equity
would compel Moore, Marsh & Co. to relinquish their
lien upon the money in the hands of the sheriff in
court to be distributed, and compel them to proceed

against the land and to bring suits on the notes and accounts. Although Moore, Marsh & Co. had liens upon the land and notes and accounts, these did not constitute an ultimate fund equally as accessible to them as the money in court. There was no error, therefore, in dismissing this issue upon demurrer. See Plant *v.* Gunn, 7 Fed. Rep. 751, decided by Mr. Justice Woods of the Supreme Court of the United States upon facts similar to the facts of this case. As to the rent, the issue tendered did not set up any distinct claim to have it applied to the debt of Moore, Marsh & Co., nor did it aver that it had not been so applied, or that it was not embraced in the payments set up in the issue of payment which the court allowed to stand.

5. During the progress of the trial, Moore, Marsh & Co. tendered their mortgage, which recited that it was given to secure an indebtedness of $3,217.15 ; also the affidavit of foreclosure upon this mortgage, which alleged that Bibb was indebted to them $3,651.78 principal, $216.59 interest, and $386.83 attorneys' fees; and also the *fi. fa.* issued thereon, for the amounts specified in the affidavit of foreclosure. To the introduction of the mortgage, affidavit and *fi. fa.* Vance & Kirby objected on the grounds that the mortgage showed on its face that it was given to secure an indebtedness of $3,217.15 as principal, and the foreclosure was for $3,651.78 principal, and interest, and attorneys' fees on the latter amount. This objection was overruled, and Vance & Kirby excepted. The fact that there was a variance between the amount claimed in the affidavit of foreclosure of the mortgage on the personalty, and the amount stated in the mortgage, does not in our opinion make the foreclosure void. If the amount claimed in the affidavit is too large, the defendant in the mortgage or the contesting creditor, as in this case, can contest the amount claimed and have it reduced if

it is too large. This was one of the issues tried in the case, and the jury by their verdict reduced the claim made in the affidavit nearly $1,000. There was no error, therefore, in admitting the mortgage, affidavit and *fi. fa.* in evidence before the jury.

6. The next error complained of is, that when the jury returned a verdict, "We, the jury, find on the issue in favor of Vance & Kirby," the judge ordered the jury to retire and find what amount, if any, was due upon the mortgage of Moore, Marsh & Co.; whereupon the jury retired and brought in the following verdict: "We, the jury, find on mortgage in favor of Moore, Marsh & & Co., principal $2,678.22, interest $452.03, attorneys' fees $267.82." The court did right in sending the jury back to their room to find what was due upon Moore, Marsh & Co's mortgage. That was the real issue which they were empanelled to try. Their first verdict did not cover this issue, and it was the duty of the court to have the issue passed upon by them and to send them back to their room in order that this might be done.

*Judgment affirmed.*