ARCHIE A. SWINKS, TRANSFEREE, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 6562-66. Filed October 7, 1968.

*Henry B. Smith,* for the petitioner.
*Charles B. Sklar,* for the respondent.

DAWSON, *Judge:* Respondent has asserted against petitioner limited transferee liability of $12,000, plus interest thereon as provided by law, for an income tax deficiency due from Swinks Construction Co., transferor, for the taxable year ended June 30, 1959, in the amount of $105,736.60 and additions to tax under sections 6651(a) and 6653(a), I.R.C. 1954, in the amounts of $26,434.15 and $5,286.83, respectively.

Since the deficiency and additions to tax due from Swinks Construction Co. for the taxable year ended June 30, 1959, have been established by a prior order of this Court, the only two issues remaining for decision are (1) whether petitioner is liable as a transferee to the extent of $12,000, plus interest thereon as provided by law, for the unpaid income tax deficiency and additions to tax due from Swinks Construction Co. and (2) whether the assessment and collection of the deficiency from petitioner as transferee are barred by the statute of limitations.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

Archie A. Swinks (herein referred to as petitioner) was a resident of Decatur, Ga., at the time he filed his petition in this proceeding.

Swinks Construction Co. (sometimes herein referred to as the transferor) was incorporated under laws of the State of Georgia on March 2, 1954, and filed its Federal corporate income tax return for each of its taxable years ended June 30, 1955, June 30, 1956, and June 30, 1958, with the district director of internal revenue at Atlanta, Ga. Swinks Construction Co. did not file a Federal corporate income tax return for its taxable year ended June 30, 1959.

W. T. Swinks, Jr., who died on May 19, 1962, was the president and sole stockholder of Swinks Construction Co., transferor, which was engaged in the business of residential construction.

During the same years that the transferor was engaged in residential construction, W. T. Swinks, Jr., was also engaged in residential construction as an individual separate and apart from Swinks Construction Co.

Petitioner, the brother of W. T. Swinks, Jr., and a vice president of Swinks Construction Co., was engaged during 1959 and a number of years prior thereto in the business of residential construction as an individual separate and apart from Swinks Construction Co. Petitioner owned no stock in the transferor corporation.

In January 1959, Swinks Construction Co. maintained two bank accounts with the Trust Co. of Georgia. These accounts were designated as account No. 1 and account No. 2. Account No. 1 had a balance of $8.99 as of January 19, 1959, and was inactive until it was closed in April 1959. Only petitioner was authorized to draw checks on account No. 2. A summary of the deposits and withdrawals to account No. 2 from January 1, 1959, to May 15, 1959, is as follows:

| Particulars | Amount |
| --- | --- |
| Balance Jan. 1, 1959 | $3,930.38 |
| Add deposits Jan. 1 to May 15, 1959 | 12,470.26 |
| Deduct withdrawals Jan. 1 to May 15, 1959 | (14,138.17) |
| Balance May 15, 1959 | 2,262.47 |

Account No. 2 was closed on July 11, 1961.

Although Swinks Construction Co. has not been formally dissolved, it has been dormant, has not carried on any business, and has had no assets since June 1959.

After the sale of its last house on March 19, 1959, the only assets of the transferor consisted of cash and a 1957 automobile, which at that time had a net book value of less than $1,875.

Except for the disposition of the automobile owned by the transferor which is not known, all of the remaining assets of the corporation, which consisted solely of cash, were transferred to petitioner. From January through May 1959, Swinks Construction Co. transferred $12,000 in cash to petitioner.

The dates and amounts of the checks comprising the $12,000 paid to petitioner are as follows:

| Date of check 1959 | Check No.— | Amount of check |
| --- | --- | --- |
| Jan. 2 | 1650 | $500 |
| Feb. 5 | 1653 | 1,500 |
| Feb. 16 | 1658 | 3,000 |
| Apr. 7 | 1665 | 2,500 |
| May 6 | 1668 | 4,000 |
| May 14 | 1669 | 500 |
| Total | | 12,000 |

The transfers of cash were made by the transferor to petitioner without petitioner's paying or the transferor's receiving any consideration in return therefor.

Petitioner did not report as income on his Federal income tax return any portion of this $12,000 he received from the transferor from January through May 1959.

On September 15, 1966, respondent sent to petitioner, by certified mail, a notice of transferee liability in which it was determined that for its taxable year ended June 30, 1959, Swinks Construction Co. was liable for a deficiency in income tax in the amount of $105,736.60, and was also liable for additions to the tax under the provisions of sections 6651(a) and 6653(a), I.R.C. 1954, in the amounts of $26,434.15 and $5,286.83, respectively. In addition, the notice determined that, as a result of petitioner's having received from the transferor in 1959 the $12,000 in cash, petitioner was liable as transferee of assets of Swinks Construction Co. for the deficiency in tax and additions to the tax due from the transferor for its taxable year ended June 30, 1959, to the extent of $12,000 plus interest as provided by law.

The petition filed with the Court on December 16, 1966, by petitioner herein did not request a redetermination of the deficiency in tax or additions to the tax, and the Court by its order entered on May 17, 1967, held that future proceedings in this case would be limited to issues involving petitioner's liability as a transferee of Swinks Construction Co. Thus, no petition was filed with this Court requesting a redetermination of the deficiency determined against the transferor in the notice mailed to petitioner on September 15, 1966.

The deficiency in income tax and additions to the tax, as set forth in the notice herein, was properly determined against the transferor. No part of this deficiency or the statutory interest has been paid, and the entire amount is still outstanding.

By reason of the transfers, totaling $12,000 in cash, by the transferor to the petitioner, the transferor was rendered, and is, insolvent and without assets with which to pay the deficiency in income tax and additions to the tax due for its taxable year ended June 30, 1959, plus statutory interest thereon.

Because of the insolvency of the transferor from approximately June 1959 to the present, any further efforts by respondent to collect from the transferor the deficiency in income tax and additions to the tax due from the transferor would be a useless gesture.

During the years 1955 through 1959 Swinks Construction Co. maintained books and records which were used to prepare its Federal corporate income tax returns. These books and records and the Federal corporate income tax returns prepared from them were reasonably re-

liable with regard to business expenses as well as corporate balance sheet and income items. There was an attempt to keep expenses of Swinks Construction Co. separate and apart from the individual expenses of W. T. Swinks, Jr., and the petitioner.

The Federal corporate income tax returns of Swinks Construction Co. show that the corporation was indebted to its officers on the dates shown for the following amounts:

| Date | Liability of Swinks Construction Co. for "Amounts Due to Officers" |
|---|---|
| July 1, 1954 | none |
| June 30, 1955 | $6, 925. 81 |
| June 30, 1956 | none |
| July 1, 1957 | none |
| June 30, 1958 | none |

Petitioner is liable as a transferee for the unpaid deficiency in income tax and additions to the tax due from Swinks Construction Co., transferor, for its taxable year ended June 30, 1959, in the total amount of $12,000 plus interest thereon as follows:

| Date from which interest is to be computed 1959 | Amount on which interest is to be computed |
|---|---|
| January 2 | $500 |
| February 5 | 1, 500 |
| February 16 | 3, 000 |
| April 7 | 2, 500 |
| May 6 | 4, 000 |
| May 14 | 500 |

## OPINION

Since the petitioner has filed no brief, the Court has attempted to glean his position from the pleadings, the opening statement of his attorney, and from the evidence presented. As we understand it, petitioner's position is that there was valuable consideration for the cash transfers, totaling $12,000, made to him by Swinks Construction Co. in 1959, and therefore he is not liable as transferee of the corporation to the extent of $12,000 plus interest thereon as provided by law. To the contrary, respondent's principal contention is that petitioner is liable as a transferee under section 28–201 (3), Ga. Code Ann., because the transfers in question were made by the transferor voluntarily, without consideration, and while the transferor was insolvent. In addition, respondent contends that the assessment and collection of the $12,000 plus interest, from petitioner as transferee are not barred by the statute of limitations.

Section 6902(a), I.R.C. 1954,[1] provides that in proceedings before this Court the respondent has the burden of proving that petitioner is liable as a transferee of property of a taxpayer, but not to show that the taxpayer is liable for the tax.

A transferee is liable retroactively for the transferor's taxes and additions to the tax in the year of the transfer to the extent of assets received from the transferor, even though the tax liability of the transferor was unknown at the time of the transfer. *Sidney Kreps*, 42 T.C. 660, 670 (1964), affd. 351 F.2d 1 (C.A. 2, 1965); *Leon Papineau*, 28 T.C. 54, 58 (1957); *J. Warren Leach*, 21 T.C. 70, 75 (1953).

Existence of transferee liability is determined by State law. *Commissioner* v. *Stern*, 357 U.S. 39 (1958). The provisions of Georgia law which set forth the rights of creditors to pursue property transfers of their debtors are found in section 28–201, Ga. Code Ann.[2]

It is clear that the Federal income tax liability of the transferor, Swinks Construction Co., for the taxable year ended June 30, 1959, is established. It totals $137,457.58. It is also established that the petitioner received a total of $12,000 in cash on various dates during 1959. Thus, the total assets ($12,000) received by petitioner are insufficient to satisfy the transferor's tax liability ($137,457.58). The record shows that the $12,000 paid to petitioner consumed all or virtually all of the assets of Swinks Construction Co. Since petitioner was the only person authorized to draw checks on Swinks Construction Co.'s account No. 2 with the Trust Co. of Georgia and since W. T. Swinks, Jr., the president and sole stockholder of the corporation, had agreed that petitioner should withdraw $12,000 from the corporate bank account, it is plain that the transfers were voluntary.

The only remaining requirements of section 28–201(3), Ga. Code Ann., are insolvency and lack of valuable consideration. By the Court's order dated November 8, 1967, it has been deemed admitted that as a result of the transfers of $12,000 in cash to petitioner the Swinks Construction Co. was rendered insolvent and has remained insolvent. Where, as here, the books and records of the transferor are not available, both parties may utilize balance sheets shown on the Federal income tax returns of the transferor-corporation as evidence of corporate assets, liabilities, and capital. *Sidney Kreps, supra.* In this case, as of June 30, 1958, the assets of Swinks Construction Co., as shown in its Federal income tax return for its taxable year then

---

[1] All section references herein relate to the Internal Revenue Code of 1954 unless otherwise indicated.

[2] Enumeration of void acts.—The following acts by debtors shall be fraudulent in law against creditors and others, and as to them null and void, viz:

\*         \*         \*         \*         \*         \*         \*

3. Every voluntary deed or conveyance, not for a valuable consideration, made by a debtor insolvent at the time of such conveyance.

ended, amounted to $14,068.70, with no liabilities then outstanding. According to the transferor's Federal income tax returns for the taxable years ended June 30, 1955, June 30, 1956, and June 30, 1958, $14,068.70 was the largest amount that corporate assets had exceeded liabilities. Yet the deficiency in tax and additions to the tax for the taxable year ended June 30, 1959, aggregated $137,457.58, an amount far exceeding any assets available at any time between January and June 1959. Hence the transferor was hopelessly insolvent at all times from January through June 1959.

The Supreme Court of Georgia has defined insolvency as applicable to creditors' remedies and fraudulent conveyances in terms of whether assets exceed liabilities. If a person's property is insufficient in value to discharge all his debts, he is insolvent for purposes of section 28–201, Ga. Code Ann. See *Cohen* v. *Parish*, 100 Ga. 335, 28 S.E. 122 (1897). Therefore, Swinks Construction Co. was insolvent within the meaning of Georgia law at all times from January through June 1959. Section 28–201(3) has been specifically and unequivocally interpreted by the Supreme Court of Georgia to stand for the proposition that a voluntary transfer by a debtor may be avoided by his creditor if the debtor was insolvent at the time of such transfer or was thereby rendered insolvent. *Cunningham* v. *Avakian*, 192 Ga. 391, 15 S.E. 2d 493 (1941).

The final element necessary to establish transferee liability under section 28–201(3) is the lack of valuable consideration by the transferee. A conveyance based on no consideraton will not bind the transferor's creditors even though the insolvent debtor might be absolutely free of fraudulent intent at the time he made the conveyance. *Moncrief Furnace Co.* v. *Northwest Atlanta Bank*, 193 Ga. 440, 19 S.E. 2d 155 (1942).

In his effort to show that there was valuable consideration for the transfers, petitioner submitted 59 checks and certain equivocal testimony in connection therewith. The 59 checks drawn and submitted by petitioner, which totaled $13,889.08, are no consideration for the transfers in question because not one of the checks was paid to Swinks Construction Co. The checks were payable to W. T. Swinks, Jr., individually, to cash, to various third parties specifically identified as having no connection with Swinks Construction Co., and to other third parties who received minor amounts for which no connection with Swinks Construction Co. was shown. Petitioner has failed to show that he made any advances to Swinks Construction Co. Moreover, he has produced no evidence that the amounts paid to his brother and to others were in any way used for the benefit of Swinks Construction Co.

The books and records of Swinks Construction Co. were not available. However, petitioner testified that during the years 1955 through 1959 the corporation did maintain books and records which were used

to prepare the Federal corporate income tax returns for those years. Petitioner believed the books and records and the Federal income tax returns prepared therefrom were reasonably reliable regarding business expenses, as well as regarding corporate income and corporate assets and liabilities. There was an attempt to keep the expenses of Swinks Construction Co. separate and apart from the individual expenses of A. A. Swinks and W. T. Swinks, Jr. Schedule L of the Federal income tax returns of Swinks Construction Co. shows that the corporation was indebted to its officers, as follows:

| Date | Liability of Swinks Construction Co., for "Amounts Due to Officers" |
|---|---|
| July 1, 1954 | none |
| June 30, 1955 | $6,925.81 |
| June 30, 1956 | none |
| July 1, 1957 | none |
| June 30, 1958 | none |

All but two of the checks submitted by petitioner were issued prior to June 30, 1956, and all of petitioner's checks were issued prior to June 30, 1958. Petitioner's checks were not recorded as amounts due to petitioner on the books of Swinks Construction Co. and were not shown on the Federal corporate income tax return for any of the taxable years ended June 30, 1955, June 30, 1956, or June 30, 1958, as amounts due to petitioner, an officer of the corporation. Petitioner has submitted no evidence which would indicate that the corporate income tax returns are incorrect regarding amounts due to its officers.

Petitioner seeks to ignore the corporate entity of Swinks Construction Co. and wants the Court to find that amounts paid to or for the benefit of his brother, W. T. Swinks, Jr., were paid to or for the benefit of the corporation. We cannot do this. See *Moline Properties, Inc.* v. *Commissioner*, 319 U.S. 436 (1943); *National Carbide Corp.* v. *Commissioner*, 336 U.S. 422 (1949).

Accordingly, we hold that the petitioner is liable as a transferee to the extent of $12,000, plus interest thereon as provided by law.

In *Estate of Samuel Stein*, 37 T.C. 945, 961 (1962), we held that—

where a transferee receives assets insufficient to satisfy the transferor's tax liabilities,[17] determination of the existence, starting date, and rate of interest upon the retention of those assets prior to demand therefor is controlled by State law.[18] [Footnotes omitted.]

Where, as here, the exact dates of the transfers and the exact amounts transferred are known and are in evidence, interest runs from the date of each specific transfer on the amount transferred at 7 percent per annum, the legal interest rate in Georgia. Sec. 57–101, Ga. Code Ann.

Swinks Construction Co., the transferor, failed to file an income tax return for its taxable year ended June 30, 1959. Therefore, under the provisions of section 6501(c)(3), I.R.C. 1954, the tax could be as-

sessed or a proceeding in Court for the collection of such tax could be begun without assessment at any time. Since the deficiency in income tax and additions to the tax plus statutory interest may be assessed at any time against the transferor, liability for such deficiency and interest may, at any time, be asserted against petitioner as a transferee of the assets from the transferor. See sec. 6901 (c) (1).

To reflect the conclusions reached herein,

*Decision will be entered under Rule 50.*